**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LONNIE THOMAS,

Petitioner,

v.

DUNCAN MACLAREN,

Respondent.
_______________________________________/

Case No. 14-13492
HON. TERRENCE G. BERG

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYNG A CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

This is a habeas case brought pursuant to 28 U.S.C. § 2254. The petitioner, Michigan state prisoner Lonnie Thomas, was convicted in the Wayne County Circuit Court of three counts of first-degree criminal sexual conduct under M.C.L §§ 750.520b(1)(a) and (2)(b). (Dkt. 1, p. 1.) Petitioner is serving concurrent terms of 25-to-40 years' imprisonment for each conviction. (Dkt. 9-9, p. 11). The application raises three claims: (1) the trial court erroneously prevented defense counsel from questioning potential jurors during jury selection; (2) prosecutorial misconduct; and (3) insufficient evidence to support Petitioner's convictions. (Dkt. 1, pp. 5, 7, and 8).

For the reasons stated below, the Court will **DENY** the petition because the state court adjudication of his claims did not involve an unreasonable application of clearly established United States Supreme Court law. The Court will also **DENY** Petitioner a certificate of appealability and permission to proceed on appeal in forma pauperis.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2011, Petitioner was convicted in Wayne County Circuit Court of three counts of first-degree criminal sexual conduct. (Dkt. 1, p. 1.) Petitioner was initially sentenced on April 28, 2011 to "25 years to life" on each count, to be served concurrently. (Dkt. 9-8, p. 7.) On May 10, 2011, Petitioner filed a writ of habeas corpus with the trial court. (*See* Dkt. 9-1, p. 5.) The trial court then amended its original sentence at a second hearing on May 17, 2011, sentencing Petitioner to concurrent prison terms of 25 to 40 years.[1] (*See id.*)

On March 27, 2012, Petitioner appealed his jury-trial convictions to the Michigan Court of Appeals.[2] (*See* Dkt. 1, p. 2; Dkt. 9-9, p. 10.) On appeal, Petitioner contended that: (1) the trial judge, in conducting voir dire himself, failed to delve into any true bias that might be present within the jury pool; (2) the prosecutor committed misconduct by making inflammatory and disparaging remarks about Petitioner in her closing argument and denigrating defense witnesses by characterizing them as untruthful; (3) Petitioner's attorney was ineffective by not objecting to the prosecutor's remarks; and (4) the evidence presented at trial was

---

[1] May 17, 2011 is the date of sentencing that appears in Petitioner's offender profile. *See* Offender Profile, Offender Tracking Information System ("OTIS"), http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=802563 (last visited April 29, 2016); *see also* the Amended Judgment of Sentence (Dkt. 9-9, p. 11.)

[2] Petitioner did not immediately appeal his sentence but returned to the trial court on February 17, 2012, approximately 7 months after he was sentenced, having filed a motion to reclaim his right to appeal as of right. (*See* Dkt. 9-1; Dkt. 9-9, p. 12.) The Court granted Petitioner's motion and issued a nunc pro tunc order, allowing Petitioner's appeal to go forward. (Dkt. 9-9, p. 12.)

insufficient to support his convictions.[3] *See People v. Thomas*, No. 309339, 2013 WL 2120299 (Mich. Ct. App. May 16, 2013).

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> According to the victim, when she was about seven years of age and defendant was babysitting her, he would tell her to pull down her pants and underwear and lay down on the floor, and then he would "lick" her "private part." She testified that he licked her "[i]n the middle" of her "private part," which she normally used to go to the bathroom. This occurred more than once and on "most of the days" over the course of the months that he babysat her. Defendant told her not to tell anyone. The victim similarly told the forensic interviewer that the incidents occurred every time defendant babysat her and "more than once" but that defendant "never did anything else." Although corroboration was unnecessary, the victim's mother gave a similar account of the abuse as told to her by the victim, and her description of how the victim eventually disclosed the abuse to her was nearly identical to the victim's testimony.

*Thomas*, 2013 WL 2120299 at * 3.

On May 16, 2013, the Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *Thomas*, 2013 WL 2120299 at * 1. Because Petitioner did not object to voir dire, the jury, or the prosecutor's remarks at trial, the Court reviewed these claims for plain error only. *Id.* With regard to the voir dire claim, the Court found that "the trial court adequately questioned the juror regarding potential bias," generating 76 pages of transcript. *Id.* at * 1-2. The Court also dismissed the claim of prosecutorial misconduct, finding that the prosecutor's

---

[3] In this federal habeas petition, Petitioner has raised all these claims except a claim for ineffective assistance of counsel. (*See* Dkt. 1.)

language was arguably harsh, but it "did not rise to the level of prosecutorial misconduct warranting reversal." *Id.* at * 3.

Petitioner's remaining claims fared no better. Although Petitioner's ineffective assistance of counsel claim was not found to be properly before the Court because Petitioner "failed to raise it in his statement of the questions presented,"[4] the Court, having found that there was no prosecutorial misconduct, noted that Petitioner's "defense counsel cannot be deemed ineffective for failing to raise meritless objections to the prosecutor's proper arguments." *Id.* at * 4. Finally, the Court held that the evidence presented at trial was sufficient to support the verdict, stating that "[t]he victim's testimony alone was enough to establish the elements of the offenses in [Petitioner's] case." *Id.* at 5. Petitioner filed a motion for reconsideration, but this motion was denied on July 2, 2013. (Dkt. 9-9, p. 107.)

Petitioner appealed this decision to the Michigan Supreme Court. (Dkt. 9-10.) On December 23, 2013, the Michigan Supreme Court denied Petitioner's application because it was not persuaded that the questions presented should be reviewed. *People v. Thomas*, 840 N.W.2d 328 (Mich. 2013) (unpublished table decision). Petitioner did not appeal to the United States Supreme Court. Instead, Petitioner filed this federal habeas petition on September 9, 2014. (Dkt. 1.) Petitioner twice filed to stay this case, and the Court denied both motions. (Dkts. 7, 13.)

[4] Petitioner raises this claim in his appellate brief, stating that "[t]rial counsel's failure to object to the improper prejudicial remarks constitutes ineffective assistance of counsel." (Dkt. 9-9, p. 43.)

## II. LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Accordingly, 28 U.S.C. § 2254(d) sharply curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas corpus action if the claims were rejected on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established law, "as determined by the Supreme Court of the United States" at the time the state court renders its decision. 28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000)); *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not

been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam))

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams,* 529 U.S. at 405-06); *see also Bell v. Cone,* 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of a petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal

habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* In order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* Section 2254(d) thus "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal…" *Id.*

As noted above, a state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). Accordingly, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## III. ANALYSIS

### A. Procedural Default

Respondent asserts that: (1) Petitioner's jury voir dire claim is barred from review because Petitioner's trial counsel failed to lodge a contemporaneous objection; and (2) that Petitioner's prosecutorial misconduct claim is defaulted due to his counsel's failure to place an objection. (Dkt. 8, pp. 3, 29-34, 39-40). The Court will nevertheless proceed directly to the merits of Petitioner's claims without consideration of whether they are procedurally defaulted because the claims lack substantive merit and a procedural-default analysis "adds nothing but complexity to the case." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010).

### B. Jury Voir Dire

Petitioner's first claim asserts that he was denied his Sixth Amendment right to a fair and impartial jury when the trial court questioned prospective jurors on its own without the participation of the parties. (Dkt. 1, p. 5.) Petitioner argues that this questioning of the prospective jurors was cursory at best and did not delve into issues which might have ferreted out jurors who would be unable to impartially decide a child-molestation case. (*Id.* at 52-56.)

The Michigan Court of Appeals found that the claim was waived by defense counsel's failure to object, but it also reviewed the record and determined that the trial court conducted an adequate voir dire questioning of the prospective jurors. The appellate court noted that the trial court excused several jurors who had connections to sexual assault victims. The prosecutor also excused one juror for cause on the

basis of his connection to a crime victim, and defense counsel exercised nine peremptory challenges. *Thomas*, 2013 WL 2120299, at * 1-2.

"[P]art of the guarantee of a defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors." *Morgan v. Illinois*, 504 U.S. 719, 729 (1992). "[W]ithout an adequate voir dire the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled." *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981). The Supreme Court has admonished, however, that "[t]he adequacy of voir dire is not easily the subject of appellate review." *Morgan*, 504 U.S. at 730. A state trial judge "retains great latitude in deciding what questions should be asked on voir dire." *Mu'Min v. Virginia*, 500 U.S. 415, 424 (1991). A state court's refusal to pose "constitutionally compelled" questions can entitle a habeas petitioner to relief. *Id*. at 424-26. But questions are "constitutionally compelled" during voir dire only if "the trial court's failure to ask these questions [renders] the defendant's trial fundamentally unfair." *Id*. at 425-26.

Here, the trial court conducted the voir dire of prospective jurors on its own without any participation by the attorneys except for entertaining their challenges for cause and peremptory strikes. The court began the selection process by informing the prospective jurors of the importance of the right to trial by jury, and that the jurors must be free from bias, prejudice or sympathy for either side. (Dkt. 9-5, pp. 10-11). The jury pool was administered an oath to answer all questions honestly. (*Id*. at 11.) The jurors were informed that they would be asked questions to find out if

they knew anything about the particular case and to find out if they had any opinions or experiences that might cause them not to be impartial. (*Id.* at 12.) They were told not to hesitate to speak freely about anything they believed the court should know. (*Id.* at 12-13.)

The court informed the jurors of the identities of the defendant, the victim, the witnesses, the lawyers, and the officers involved in the case. (*Id.* at 13-15.) The court also informed them about the anticipated length of the trial and asked if it would present a hardship for any of them. (*Id.* at 16-18.) After telling the jurors about the legal standards governing the case, including the presumption of innocence and the beyond-a-reasonable-doubt burden of proof, the court then read the criminal information to the jury, informing them that the charges involved the alleged sexual assault of a child. (*Id.* at 18-21, 66.)

Next, the court asked each juror seated on the panel a series of general biographical questions about their age, level of education, profession, marital status, whether they had children, and their children's ages. (*Id.* at 23-99.) Throughout the selection process, as jurors were struck and replaced, the court asked each replacement juror the same set of biographical questions. (*See id.*) The jurors were all asked if they would be able to keep open mind until they heard all of the evidence. (*Id.* at 49.)

Each juror was asked whether they had previously served as a juror, and if so, what the nature of the case was and the verdict. (*Id.* at 38-40.) The jurors were asked whether they had personally been victims of a crime or whether any of their family

members or friends had been victims. (*Id.* at 40-44.) They were also asked whether they would give more weight to the testimony of police officers, (*Id.* at 44-47). They were asked whether they had been arrested or convicted of any crimes. (*Id.* at 48-49.) And they were asked if they would be able to put aside feelings of sympathy for either side. (*Id.* at 49.)

When the Court informed the jury pool about the nature of the charges, it elicited responses from some jurors that they could not be fair and impartial. A gynecologist who examined rape victims was excused for cause. (*Id.* at 49-50.) Another three jurors were struck for cause or peremptorily because they indicated that they knew victims of sexual assault cases. (*Id.* at 56-57, 73, 76-77.) Another juror was excused when he indicated that he believed a defendant who was arrested must have done something wrong. (*Id.* at 74.)

Accordingly, contrary to Petitioner's assertions, the voir dire was conducted in a constitutionally permissible manner. Petitioner has failed to identify any omitted area of questioning that rendered his trial fundamentally unfair. *See Mu'Min*, 500 U.S. at 425-26. Petitioner asserts that the jurors were not asked about their views on homosexuality (Dkt. 1, p. 54), but he fails to show how such questioning was relevant to his defense—as far as the record shows Petitioner identifies as male and the victim identifies as female.

It is true, as Petitioner asserts, that the jurors were not asked about their views on the credibility of children as witnesses (*Id.*), but the jurors were informed that the case involved a child-victim and they were asked if they could put aside

their feelings of sympathy. (Dkt. 9-5, pp. 12-13.) The jurors were also asked whether they had children and were told to speak freely about anything they believed the court should know. (*Id.*) Notably, three prospective jurors were struck because of the nature of the charges. This indicates that the court's questioning was probing enough to ferret out the type of juror Petitioner alleges the court's inquiries were inadequate to reveal.

Established Supreme Court law did not require more probing questions then the ones asked by the trial court. "No hard-and-fast formula dictates the necessary depth or breadth of voir dire." *Skilling v. United States*, 561 U.S. 358, 386 (2010) (citing *United States v. Wood*, 299 U.S. 123, 145-146 (1936)) ("Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula.")

In *Ham v. South Carolina*, 409 U.S. 524, 527 (1973), the Supreme Court held that a state trial judge was constitutionally compelled in that case to inquire into the possibility of racial prejudice during the voir dire of a jury. However, the Court further concluded that a trial judge is not required to put the question in any particular form, or to ask any particular number of questions on the subject, simply because the judge was asked by the defendant to do so. *Id*. Under the Fourteenth Amendment, "brief, general questions" about possible racial prejudices are "sufficient to focus the attention of prospective jurors on any racial prejudice they might entertain." *Id*. Similarly here, the jury was made sufficiently aware of the

nature of this case to reveal any prejudices or biases they might hold given the nature of the charges against Petitioner.

After a careful review of the record, the Court finds that the decision by the state appellate court that the trial court conducted a constitutionally-adequate voir dire was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103 (internal quotation omitted). Petitioner has failed to demonstrate entitlement to habeas relief under section 2254(d).

**C. Prosecutorial Misconduct**

Petitioner's second claim asserts that the prosecutor inflamed the passions of the jury by referring to him as a "monster," "creep," and "pervert" during closing arguments. (Dkt. 1, p. 58; Dkt. 9-7, p. 46.) Petitioner also asserts that the prosecutor improperly attacked the defense witnesses' credibility by characterizing them as being untruthful. (Dkt 1, p. 61.) The Michigan Court of Appeals found that this unpreserved allegation of error did not rise to the level of prosecutorial misconduct warranting reversal. *Thomas*, 2013 WL 2120299, at * 2-3.

The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also*

*Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (confirming that *Donnelly/Darden* is the proper standard). "[T]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because constitutional line drawing in prosecutorial misconduct cases is necessarily imprecise." *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (internal quotation marks and alterations omitted). Indeed, because "the *Darden* standard is a very general one," courts have "more leeway . . . in reaching outcomes in case-by-case determinations." *Parker*, 132 S. Ct. at 2155 (internal quotation marks omitted).

Petitioner complains about the following excerpt of the prosecutor's closing argument:

> What is not in dispute, Lonnie Carl Thomas was a man people knew and trusted, people thought was a good guy. Even [AD]'s own mother sat there and told you [defendant] was a good man. I loved him, I trusted him, I believed in him, I had faith in him. She did not paint him to be some kind of monster. She didn't know he was a creep and I [sic] should not have let my [sic] baby with him.
>
> One of the things I said in opening statement is that baby sitters [sic] don't come with warning labels. Lonnie Thomas didn't come with a[n] I'm a creepy pervert, leave me alone with your little girl and I will have oral sex with her.
>
> We give kids medicine, toys, movies, all have warning labels. Lonnie Thomas didn't. The reputation you heard he had in the community from play sisters and friends he has known for 20 years and different kids he watched, what was his reputation? Exactly what Raquel Poe told. He was a good man. The kind of person people trusted with their kids. No matter what his relationship was with other kids, no matter what else he did in the world, he was the kind of person these women felt safe leaving their children alone with.

(Dkt. 9-7, pp. 46-47).

A prosecutor may not make statements for the sole purpose of inflaming the jury's passions against the defendant. *Wogenstahl v. Mitchell*, 668 F.3d 307, 333 (6th Cir. 2012). Prosecutors are not categorically barred, however, from using rhetorical devices reasonably calculated to make relevant points. *United States v. Taylor*, No. 09-5517, 2016 WL 537444, at * 22 (6th Cir. Feb. 11, 2016) (defendant's trial not rendered unfair by prosecutor comments comparing him to a "remorseless and relentless hunter," a "dangerous chameleon," and a "wolf"). In fact, in *Darden* itself the prosecutor referred to the defendant as an "animal" who "shouldn't be out of his cell unless he has a leash on him," and the Supreme Court held that these comments did not deprive the defendant of a fair trial. *Id.*, 477 U.S. at 181-83; *see also United States v. Wettstain*, 618 F.3d 577, 588–90 (6th Cir. 2010) (prosecutor's description of defendants as "monsters" improper but not requiring reversal); *Bedford v. Collins*, 567 F.3d 225, 234 (6th Cir. 2009) (prosecutor's description of defendant as a "demon" did not deprive the defendant of a fair trial); *United States v. Davis*, 514 F.3d 596, 616 (6th Cir. 2008) (prosecutor calling defendant a "predator" did not require reversal).

Quite simply, if the Supreme Court did not grant relief to the defendant in *Darden*, where the prosecutor compared the defendant to an "animal," and if the Sixth Circuit was not compelled to grant relief where the prosecutor compared the defendants to "monsters" or "predators," then so too was the Michigan Court of Appeals permitted to deny relief when Petitioner was compared to a "monster" or

"creep."

Similarly, the prosecutor did not denigrate defense witnesses who vouched for Petitioner's character. The prosecutor asserted that the jury should question these witnesses' credibility because on cross examination she showed that they did not know Petitioner as well as they thought they did. (Dkt. 9-7, pp. 60-61). This line of argument was not improper; it was properly based on the evidence presented at trial.

The state court adjudication of this claim did not result in an unreasonable application of the clearly established Supreme Court standard. Accordingly, Petitioner has failed to demonstrate entitlement to habeas relief under § 2254(d).

**D. Sufficiency of the Evidence**

Petitioner's third claim challenges the sufficiency of the evidence. (Dkt. 1, p. 28.) He asserts that the only evidence linking him to the crime was the testimony of the young victim. (*Id.* at 29.) He notes that the testimony of the victim was not corroborated by any forensic data, medical evidence, a rape kit, or history of therapeutic treatment. (*Id.*) He also complains that the victim did not make the allegations against him until a year after the offenses were alleged to have been committed, and only after there was a dispute between the victim's mother and Petitioner regarding money owed for his babysitting. (*Id.*) The Michigan Court of Appeals found that the victim's testimony alone was legally sufficient to support the verdict. *Thomas*, 2013 WL 2120299, at * 3-4.

"The Due Process Clause protects the accused against conviction except upon

proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. at 318-19 (internal citation and footnote omitted).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith*, 132 S. Ct. 2, 4, 181 L. Ed. 2d 311 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id*. For a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065, 182 L.

Ed. 2d 978 (2012).

At bottom, Petitioner's argument is more about the credibility of the victim than the legal sufficiency of the evidence presented against him. The victim testified to all the elements of the offense. (*See* Dkt. 9-5, pp. 110-114). The victim testified that when she was between 7 and 8 years old, Petitioner babysat for her. (*Id.*) On several occasions when the victim was alone in Petitioner's care, he would have her lay down on the airbed in the living room, remove her pants and panties, and he would "lick" her "private part." (*Id.*) Petitioner argues that there were reasons not to believe the victim, but whether to believe the victim or not was a decision for the jury, not a court reviewing the legal sufficiency of the evidence. The testimony of a single, uncorroborated prosecuting witness, or other eyewitness, is generally sufficient to support a conviction. *Brown v. Davis*, 752 F.2d 1142, 1144 (6th Cir. 1985). Attacks on witness credibility are "simply challenges to the *quality* of the government's evidence and not to the *sufficiency* of the evidence." *Moreland v. Bradshaw*, 699 F.3d 908, 920 (6th Cir. 2012) (emphasis added). This claim is also without merit.

## IV. CERTIFICATE OF APPEALABILITY

In order to appeal this Court's decision, Petitioner must obtain a certificate of appealability. To obtain a certificate of appealability, Petitioner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner,

or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, for the reasons stated above, jurists of reason would not debate whether the petition should have been resolved in a different manner. Petitioner has not made a strong showing that any of his claims have merit or were unreasonably adjudicated in the state courts. The Court will therefore deny a certificate of appealability and permission to appeal in forma pauperis because an appeal of this decision cannot be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. CONCLUSION

Accordingly, Petitioner's petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**. For the same reasons that the Court denies the petition, the Court discerns no good-faith basis for an appeal. The Court therefore **CERTIFIES** that any appeal from this decision could not be taken in good faith, and **DENIES** Petitioner a certificate of appealability and leave to appeal this decision in forma pauperis. *See* 28 U.S.C. § 1915(a)(3).

**SO ORDERED**.

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated: May 11, 2016

**Certificate of Service**

I hereby certify that this Order was electronically submitted on May 11, 2016 using the CM/ECF system, which will send notification to each party.

s/A. Chubb
Case Manager